In re THOMAS, INC., dba "Satch's".

THOMAS, INC., Debtor/Plaintiff,

v.

STANHOPE STREET ASSOCIATES, a Massachusetts Limited Partnership and Its General Partners, Manuel Z. Sherman, Robert E. Dewey, Thomas E. Sanders, Defendants.

Rosalind E. GORIN, as she is the General Partner of Stuart Clarendon Associates, Plaintiff,

v.

STANHOPE STREET ASSOCIATES, a Massachusetts Limited Partnership and Its General Partners, Manuel Z. Sherman, Robert E. Dewey, Thomas E. Sanders, Defendants.

Bankruptcy No. 83–467–L.
Adv. Nos. 83–538, 83–598.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 2, 1984.

John D. Hanify, Hanify & King, Boston, Mass., for debtor Thomas, Inc.

Robert C. Barber, Moulton, Looney & Grossman, Boston, Mass., for Thomas E. Sanders.

Herbert C. Kahn, Boston, Mass., for the Creditors' Committee of the debtor.

Richard Levine, Hill & Barlow, Boston, Mass., for Rosalind E. Gorin, as she is General Partner of Stuart Clarendon Associates.

Vincent J. DiMento, DiMento & Sullivan, and Manuel Z. Sherman, Boston, Mass., co-counsel for Stanhope Street Associates.

## MEMORANDUM AND ORDERS

RE: (1) MOTION TO REMAND; (2) MOTIONS TO DISSOLVE MEMORANDUM OF LIS PENDENS; (3) MOTION TO DISMISS AVERSARY PROCEEDING NO. 83–538 INSOFAR AS IT SEEKS TO ENJOIN ADVERSARY PROCEEDING NO. 83–598; (4) MOTION TO CONSOLIDATE ADVERSARY PROCEEDING NOS. 83–538 AND 83–598; AND (5) ORDER OF NOTICE.

THOMAS W. LAWLESS, Chief Judge.

Before the Court are various motions relating to an action entitled *Rosalind E. Go-rin,* as she is the General Partner of Stuart Clarendon Associates v. *Manuel Z. Sherman, Thomas E. Sanders* and *Robert M. Dewey, Jr.,* as they are General Partners of Stanhope Street Associates, Suffolk Superior Court No. 62496 (hereinafter referred to as the "*Stuart* action" or the "specific performance action"), which was filed in State court on June 27, 1983 and removed to this Court by the Chapter 11 debtor-in-possession, Thomas, Inc. (the "Debtor") pursuant to 28 U.S.C. § 1478(a) on June 29, 1983. The *Stuart* action is a suit for specific performance of a purchase and sale agreement signed, on or about February 23, 1983, by Gorin (for Stuart. Clarendon Associates ("Stuart")) and by Sherman, Sanders and Dewey (for Stanhope Street Associates ("Stanhope")) whereby Stuart agreed to purchase, and Stanhope agreed to sell property located at 39–45 Stanhope Street, Boston, Massachusetts (the "Stanhope Street property").

The Debtor is not a record owner of the Stanhope Street property, it is not a signatory to the purchase and sale agreement, nor is it a party in Stuart's State court specific performance action. The Debtor's asserted rights in these matters arise from an action entitled *Thomas, Inc. v. Stanhope Street Associates,* a Massachusetts Limited Partnership and its General Partners, Manuel Z. Sherman, Robert M. Dewey, Jr. and Thomas E. Sanders, Adversary Number 83–538 (hereinafter referred to as the "*Thomas* action") which was filed in this Court during the Debtor's Chapter 11 proceedings on June 22, 1983, and subsequently amended on June 29, 1983. The *Thomas* action is a suit for declaratory and injunctive relief relative to the rights and interests in what is alleged to be a common enterprise/joint venture between Stanhope, a Massachusetts limited partnership, and the Debtor corporation. Among other allegations, the *Thomas* action asserts that Stanhope, as a principal with the Debtor in the common enterprise, is without authority to assign or transfer the assets of the common enterprise without the express consent of the

Debtor as co-principal. The *Thomas* action also seeks a determination of certain related asserted rights arising from a lease dated September 28, 1979 between Stanhope Street as landlord, and the Debtor as tenant, of the Stanhope Street property. Among other prayers, the Debtor in the *Thomas* matter seeks (1) a determination that a joint venture or common enterprise exists between the Debtor corporation and the limited partnership Stanhope and, as such, the Debtor is an equitable co-owner of the Stanhope Street property; (2) an order enjoining Stanhope's sale of the Stanhope Street property to Stuart until the rights asserted by the Debtor in clause (1) are finally determined; and (3) an order enjoining Stuart from attempting to effect a determination directly or indirectly of the Debtor's asserted rights to the property in any other forum.

On or about June 29, 1983, the Debtor filed a Memorandum of Lis Pendens in the Suffolk County Registry of Records pursuant to M.G.L. c. 184 § 15[1] wherein the Debtor stated that it had commenced the *Thomas* action against Stanhope in this Court "and that certain property located in Boston, Massachusetts is liable to be affected thereby."

Subsequent to the Debtor's removal of Stuart's specific performance suit against Stanhope to this Court, Stuart filed a Motion to Remand alleging, among other things, that the *Stuart* action is beyond this Court's jurisdiction and that the resolution of that suit will have no affect on the Debtor or its property. Stuart has also filed a Motion to Dismiss seeking, among other things, an order dismissing the *Thomas* action insofar as it seeks to enjoin the continuation of *Stuart's* action in the State court. Additionally, both Stuart and Stanhope have filed Motions to Dissolve the Memorandum of Lis Pendens filed by the Debtor in the Suffolk County Registry of Deeds on the basis that the joint venture action initiated by the Debtor in the *Thomas* action "is not an adversary proceeding which is liable to affect the Stanhope Street property" and, as such, the filed Memorandum of Lis Pendens is improper under M.G.L. c. 184 § 15. Finally, the Debtor has moved that the *Thomas* and *Stuart* actions be consolidated in this Court pursuant to F.R.C.P. 42(a) because these actions involve common questions of law and fact.

At the hearing on the above-specified motions, the Debtor argued that it was necessary for the Court to retain the removed *Stuart* action and consolidate it with the *Thomas* action because an alternative disposition that allowed Stuart's specific performance suit to proceed unimpeded could effectively render moot the relief sought by the Debtor in the *Thomas* action. Implicit in the Debtor's position is the assumption that a judgment in favor of Stuart in the State court specific performance suit—from either a State court order compelling Stanhope's general partners' execution of a deed of the Stanhope Street property to Stuart or from an order determining that only two of the three general partners' signatures are necessary to convey Stanhope's interest in the property to Stuart[2] will nullify the Debtor's rights as asserted in the *Thomas*

---

1. M.G.L. c. 184 § 15, as amended by St. 1941, c. 88, reads:

   A writ of entry or other proceeding, either at law or in equity, which affects the title to real property or the use and occupation thereof or the buildings thereon, shall not have any effect except against the parties thereto, their heirs and devisees and persons having actual notice thereof, until a memorandum containing the names of the parties to such proceeding, the court in which it is pending, the date of the writ or other commencement thereof, the name of the town where the real property liable to be affected thereby lies and a description of such real property sufficiently accurate for identifica-

tion is recorded in the registry of deeds for the county or district where such real property lies; but this section shall not apply to attachments, levies of execution or proceedings, other than proceedings under equity jurisdiction, in the probate courts.

2. The underlying dispute in the *Stuart* action stems from the alleged refusal of Mr. Thomas Sanders, one of Stanhope's three general partners, to sign the title deed in June, 1983, notwithstanding the fact that Mr. Sanders had signed the purchase and sale agreement in February, 1983. Mr. Sanders is also the Debtor's president and majority stockholder and, presumably, his alleged refusal to do so was based

action. In response, Stuart argued that the *Thomas* and *Stuart* actions are in no way related. Stuart contended that at the time of the execution of the purchase and sale agreement it was without knowledge of the Debtor's asserted joint venture rights. As such, Stuart argued that under State law it is entitled to specific performance of the purchase and sale agreement, whether or not the Debtor establishes that there is a joint venture involving the Debtor and Stanhope.

In view of the parties' widely juxtaposed positions on the severability of the *Thomas* and *Stuart* actions, at the hearing on this matter the Court posed the following question:

> Assuming the Debtor is successful in the *Thomas* complaint in establishing its joint venture claim, is Stuart entitled to specific performance of the purchase and sale agreement involving the Stanhope Street property?

After review of the parties submissions and the applicable authorities, I find as follows:

■ A joint venture is an association of parties with intent, by way of an express or implied contract, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking. 46 Am.Jur.2d *Joint Ventures* § 1 (1969). Each joint venturer stands in the relation of principal, as well as agent, to each of the other coventurers, with an equal right of control of the means employed to carry out the common purposes of the venture. *Id.* Some of the factors bearing on whether a joint venture exists depend on whether there has been: (1) an agreement by the parties manifesting their intention to asso-

ciate for joint profit, not amounting to a partnership or a corporation; (2) the contribution of money, property or other assets to the common undertaking; (3) a joint property interest in all or part of the subject matter of the venture; (4) a right of each party to have some degree of input into the operation of the venture; (5) a right/duty to share in the profits and losses of the venture; and (6) a limitation to a single undertaking. *Payton v. Abbott Labs.*, 512 F.Supp. 1031 (D.Mass.1981); *Shain Investors Co., Inc. v. Cohen*, 15 Mass.App. 4, 443 N.E.2d 126 (1982). However, the absence of any one of these elements may not be fatal to establishing the existence of a joint venture. *See, e.g., Payton v. Abbott Labs.*, *supra.*

■ Generally, the rights of joint venturers in property acquired or used in connection with the venture depend upon the agreement under which the parties are operating. Unless otherwise agreed, however, property purchased for the joint venture—whether from the funds of the joint venture or from the funds of *one* of the joint venturers—belongs to all of the co-venturers for the purpose of the enterprise, so long as it exists. *See Paganucci v. Kalpouzos*, 78 Cal.App.2d 714, 178 P.2d 62 (1947); *Koyer v. Willmon*, 150 Cal. 785, 90 P. 135 (1907); *see also* 46 Am.Jur.2d, *supra*, § 40. The fact that only one of the joint venturers holds title to the joint venture's property does not impair the rights of the other parties to the joint enterprise:

> Even though title is permitted to be taken in the name of one of the co-venturers, the right of the others is not impaired thereby, for under such circumstances the one holding title becomes a trustee for all. A joint venturer holding or acquiring title to property for a joint venture is a trustee for his co-venturers

upon the rights asserted by the Debtor in the *Thomas* action. Messrs. Dewey and Sherman, Stanhope's other two general partners, have apparently taken the position that a deed signed by them alone is sufficient to convey title of Stanhope's interest to Stuart. Stuart's title insurance company has taken the position (and thus so has Stuart) that all three signatures are needed to properly convey title. In light of the Court's decision in this matter, the Court expresses no opinion on the merits of the *Stuart* action. However, it should be empha-

sized that Mr. Sanders signed the purchase and sale agreement as he is general partner of Stanhope and not as he is president of the Debtor. As Mr. Sanders' involvement in the *Stuart* action is solely in his capacity as a general partner of Stanhope, any relief obtained against him in that action would be with regard to his personal partnership interest in the property, and cannot be considered to be binding on or as a waiver of the rights asserted by the Debtor in the *Thomas* action. *See infra.*

... Clearly, one joint venturer may not appropriate the joint property to his own benefit, or deprive his co-venturers of the benefit thereof. Stated differently, until a joint venture is terminated, a party to it cannot be excluded from an interest in the property of the venture without his consent. 46 Am.Jur.2d *Joint Ventures* § 40 (1969). *See also Paganucci v. Kalpouzos, supra.* Based upon the foregoing, I find that, assuming the Debtor is successful in establishing the existence of a joint venture between it and Stanhope, Stanhope holds title to the Stanhope Street property in trust for, *inter alia,* the Debtor.

M.G.L. c. 184 § 15 authorizes the ex parte filing of a memorandum of lis pendens without notice or opportunity to be heard only when the underlying litigation "affects the title to real property or [its] use and occupation." The constitutionality of the statute was recently upheld by the Massachusetts Supreme Judicial Court in *Debral Realty, Inc. v. DiChiara,* 383 Mass. 559, 420 N.E.2d 343 (1981). In view of the above-finding that a successful joint venture claim by the Debtor will result in the imposition of a trust on the Stanhope Street property, Stanhope's Motion to Dissolve Memorandum of Lis Pendens, on the basis that the *Thomas* action will not affect the title to the property, is Denied.

■ With regard to Stuart's Motion to Remand the *Stuart* action and its Motion to Dissolve Memorandum of Lis Pendens, Stuart has taken the position that not only is it entitled to specific performance of the purchase and sale agreement executed by Stanhope's general partners in February, 1983, but that also it is not bound by the notice contained in the Memorandum of Lis Pendens. As to the latter claim, I disagree. Stuart's reliance on the doctrine of equitable conversion is misplaced. While certain

incidents of ownership are transferred to the buyer upon the execution of a purchase and sale agreement, the doctrine of equitable conversion does not operate to insulate a buyer under a purchase and sale agreement from knowledge of asserted equitable interests in the subject property. "The general law however is that, where a purchaser before payment and taking title has knowledge of any fact sufficient to put him upon inquiry whether there may not be some outstanding right in conflict with the title he is about to acquire, he cannot be considered a *bona fide* purchaser even if he thereafter pays value for the property." *Ratshesky v. Piscopo,* 239 Mass. 180, 184, 131 N.E. 449 (1921); *see also Wenz v. Pastene,* 209 Mass. 359, 362, 95 N.E. 793 (1911) ("where notice is received before the purchase price has been actually paid, the completion of the purchase is held by the great weight of authority to be a fraud upon the prior holder of the title under an unrecorded deed or instrument."). A purchaser of property from one joint venturer with knowledge of the asserted right and title of an excluded joint venturer, takes subject to the rights of the excluded joint venturer. *See Kaufman v. Catzen,* 81 W.Va. 1, 94 S.E. 388 (1917); *Reaves v. Hembree,* 330 So.2d 747, 749 (Fla.Dist.Ct.App.1976).[3]

■ Accordingly, even if the Court ordered the Debtor's Memorandum of Lis Pendens dissolved at this time, Stuart's right and title to the Stanhope Street property are subject to the rights asserted by the Debtor against Stanhope in the *Thomas* action because Stuart had actual knowledge of this action prior to the execution of a deed and the payment of the purchase price. Moreover, because the purpose of the Lis Pendens statute is to put *all* prospective third-party transferees of the property on notice of a dispute, *see Debral Realty, Inc. v. DiChiara, supra,* the Court orders

---

3. Although not asserted in its Motion to Dissolve Memorandum of Lis Pendens, Stuart has argued in its Memoranda that the Debtor is somehow estopped from filing the Memorandum of Lis Pendens, apparently because Mr. Sanders signed the purchase and sale agreement. Aside from the fact that Mr. Sanders signed the agreement as he is general partner of Stanhope, and not as he is president of the

Debtor, *see* note 2, *supra,* Stuart's rights are only derivative from those of his vendor, Stanhope, and its title can be no greater than that of Stanhope's. *See, e.g., Wight v. Packer,* 114 Mass. 473 (1874). In any case, this argument relates to the underlying validity of the *Thomas* action, a matter which will be considered at a later date. *See infra.*

that the Memorandum of Lis Pendens be maintained in Suffolk County Registry of Deeds until this Court addresses the *Thomas* action. *See generally* 28 U.S.C. § 1964 (notice of actions pending in the United States District Court that concern title to real property should be recorded where the State lis pendens statute requires same). Stanhope's Motion to Dissolve Memorandum of Lis Pendens is Denied.

As to the three remaining Motions, the Court hereby: (1) Allows Stuart's Motion to Dismiss the *Thomas* action insofar as it seeks to enjoin the *Stuart* action; (2) Denies the Debtor's Motion to Consolidate the *Thomas* and *Stuart* actions; and (3) Allows Stuart's Motion to Remand the *Stuart* action to the State court. The reasons for these rulings are as follows:

First and foremost, the Debtor's asserted property rights in the Stanhope Street property will not be impaired by the continuation of the *Stuart* action. As I found above, Stuart and any other prospective purchaser of the property will take subject to the Debtor's asserted joint venture rights. At issue in the *Stuart* action is whether Mr. Sanders can be compelled to convey his personal general partnership interest in the property to Stuart. Mr. Sanders is not a debtor in these proceedings, nor has it been asserted that his partnership interest in the Stanhope Street property is part of this Debtor's estate. It has been represented to this Court, and I have no reason to doubt it, that the issues involved in the *Stuart* action present novel questions of State law. As such, I consider it appropriate to defer to the State court's expertise in this matter. *See Thompson v. Magnolia,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

Second, a "landowner is not *prohibited* from alienating or encumbering the property subject to lis pendens. Although alienation may be more difficult, there is nothing to prevent the sale if the landowner can find a willing buyer." *Debral Realty, Inc. v. DiChiara, supra,* at note 9 (emphasis supplied). Whether this general rule of law applies to the facts of this particular case should be determined by the appropriate State court.

While it would seem to be the more expeditious course of action to consolidate the *Thomas* and *Stuart* actions in this Court, Stuart and two of Stanhope's three general partners have expressed a keen desire to litigate Stuart's specific performance action in the State court. Both Stuart and Stanhope have filed objections to this Court's jurisdiction over the *Stuart* action on the basis, among other reasons, of the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Since this is a matter involving a dispute between two non-debtor entities—Stuart and Stanhope—and because a decision on the merits will not impair the property rights asserted by the Debtor in the *Thomas* action, Stuart's Motion to Remand is Allowed.

However, this Court will retain exclusive jurisdiction over the rights asserted by this Debtor in the *Thomas* action. Accordingly, Stanhope and Stuart, their attorneys, agents and assignees, are hereby Enjoined until further order of this court from seeking a determination of the Debtor's asserted rights and/or interest in the Stanhope Street property in any other forum. 28 U.S.C. § 1471(e); 11 U.S.C. § 362. *See generally Sentinel Energy Control Systems, Inc.,* 27 B.R. 795, 10 B.C.D. 153 (Bkrtcy.D. Mass.1983).

As a final matter, the Court has reviewed Stuart's and Stanhope's Motions to Dismiss the *Thomas* action and the Debtor's Motion for Summary Judgment in that matter and does not consider the matters raised in these Motions capable of being addressed at this time. A hearing on the above-specified Motions will be held on February 23, 1984, at 2 P.M., in Courtroom 1110, John W. McCormack Post Office and Courthouse, Boston, Mass. 02109. Any further submissions regarding these Motions shall be filed and served upon all counsel in this matter on or before February 21, 1984.

Parties are to Settle and Submit Appropriate Orders in Accordance with this MEMORANDUM.